IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GERALD W. LILLARD,                          3:11-CV-06044-BR

        Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


KATHRYN TASSINARI
ROBERT A. BARON
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA  98104
(206) 615-2114

        Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Gerald W. Lillard seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for DIB on January 12, 2006,

2 - OPINION AND ORDER

alleging a disability onset date of August 31, 2005.  Tr. 124.[1]
The application was denied initially and on reconsideration.  An
Administrative Law Judge (ALJ) held a hearing on February 14,
2008. Tr. 19-87.  At the hearing Plaintiff was represented by an
attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on July 17, 2008, in which he
found Plaintiff was not disabled and, therefore, was not entitled
to benefits.  Tr. 5-18.  Pursuant to 20 C.F.R. § 404.984(d), that
decision became the final decision of the Commissioner when the
Appeals Council denied Plaintiff's request for review.  Plaintiff
appealed the decision of the Commissioner to this Court.

On December 23, 2009, Judge Michael W. Mosman issued an
Amended Opinion and Order in which he adopted the Findings and
Recommendation of Magistrate Judge Paul Papak, remanded the
matter for further proceedings, and directed the ALJ to

> elicit medical opinions regarding Lillard's
> ability to sustain employment over time.
> Specifically, the ALJ must inquire whether
> Lillard's mental impairments can produce the
> cyclical symptoms he describes, whether those
> symptoms would regularly lead to absences from
> work and whether proper medication can alleviate
> Lillard's symptoms to the extent that he could
> sustain employment.  Upon receipt of the
> additional medical evidence, the ALJ must again
> assess the credibility of the claimant and the lay
> witness testimony in light of the new evidence.

Tr. 473.

_____

[1] Citations to the official transcript of record filed by
the Commissioner on July 12, 2011, are referred to as "Tr."

On remand the ALJ conducted a new hearing on September 21, 2010, at which Plaintiff and a VE testified.  Tr. 408-45.  The ALJ issued a decision on October 20, 2010, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 385-407.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on October 14, 1968.  Tr. 135.  Plaintiff was 39 years old at the time of the first hearing and 41 years old at the time of the second hearing.  Plaintiff obtained a GED.  Tr. 26.  Plaintiff has past relevant work experience as a form builder and concrete worker.  Tr. 398.

Plaintiff alleges disability due to "paranoid personality," manic depression, and the need for a right-knee replacement.  Tr. 140.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 394-97.

## STANDARDS

The initial burden of proof rests on the claimant to

4 - OPINION AND ORDER

establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005). To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of
developing the record. *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Robbins,*

466 F.3d at 882.   The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.   *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).   The court may not substitute its judgment for that of the Commissioner.   *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.   *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).   *See also* 20 C.F.R. § 416.920.   Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.   *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).   *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.   *Stout*, 454 F.3d at 1052.   *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a

number of listed impairments that the Commissioner acknowledges
are so severe they preclude substantial gainful activity. *Stout*,
454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's Residual Functional Capacity (RFC). The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations. 20 C.F.R.
§ 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule." SSR 96-8p, at *1. In other
words, the Social Security Act does not require complete
incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284
n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at
the heart of Steps Four and Five of the sequential analysis
engaged in by the ALJ when determining whether a claimant can
still work despite severe medical impairments. An improper
evaluation of the claimant's ability to perform specific work-
related functions "could make the difference between a finding of
'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his January 12, 2006, application date. Tr. 390.

At Step Two, the ALJ found Plaintiff has the severe impairments of bipolar disorder, degenerative joint disease of the knees, degenerative disc disease of the cervical spine, "attention deficit/hyperactivity disorder (ADHD)," and episodic

polysubstance abuse.  Tr. 390.

At Step Three, the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the residual functional capacity (RFC) to perform "a range of light work," but Plaintiff was limited to two hours standing and six hours sitting in an eight-hour work day; only occasional climbing, kneeling, crouching, or crawling; "simple, routine tasks of 1-2 steps"; and occasional contact with the public. Tr. 392.  The ALJ found Plaintiff "must avoid work environments involving hazards, such as unprotected heights or moving machinery."  Tr. 392.

At Step Four, the ALJ found Plaintiff is incapable of performing his past relevant work.  Tr. 398.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 398. Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 399.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony, (2) improperly rejected lay-witness testimony, (3) improperly rejected the opinions of Plaintiff's treating and examining physicians, and (4) improperly

concluded Plaintiff could perform other work in the national economy.

**I.   Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he improperly rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are generally not credible to the extent they are inconsistent with the above [RFC]." Tr. 19. In particular, the ALJ noted Plaintiff's credibility "is undermined by his lack of candor with treating physicians regarding his employment status, his continued drug abuse, and evidence of drug-seeking behavior." Tr. 393.

The ALJ noted Plaintiff presented to an Emergency Room (ER) in October 2007 with complaints of severe left-knee pain and requested pain medication. Tr. 376, 393. Medical staff noted, however, that Plaintiff was "laughing in [the] waiting room, no acute distress noted." Tr. 376. In October 2007 a health-care provider at Umpqua Community Health Clinic noted he would not give Plaintiff any more narcotics. Tr. 643. On June 19, 2008, Plaintiff reported to Harold Anderson, M.D., treating physician, that he had never used drugs despite testing positive for amphetamines, methadone, and opiates that same day. Tr. 827, 830. On November 20, 2008, Dr. Anderson noted because Plaintiff "significantly damaged [Dr. Anderson's] faith and believe [*sic*] in [Plaintiff's] stories . . .[, Dr. Anderson] would not continue to prescribe any opiate agents" to Plaintiff. Tr. 809. On November 24, 2008, Charles Ross, D.O., noted the Evergreen Family Medical Clinic would not provide Plaintiff with any more

11 - OPINION AND ORDER

narcotics.  Tr. 723.  In January 2009 medical personnel at
SouthRiver Medical Clinic noted Plaintiff tested positive for
codeine, morphine, hydromorphone, and hydrocodone in violation of
his drug contract.  Tr. 697, 701.  On January 5 and 21, 2009,
doctors at Evergreen Family Medicine ER noted they would no
longer prescribe narcotics for Plaintiff.  Tr. 719, 721.  On
February 5, 2009, Plaintiff admitted to Scott Segal, D.O.,
treating physician, that Plaintiff had a "dependence on oxycodone
and would like to discontinue that medication."  Tr. 732.  On
May 6, 2009, Gregory Phillips, M.D., treating orthopedist, noted
Plaintiff's "urine tox screen . . . was positive for
amphetamines" and methamphetamine.  Tr. 765.  Dr. Phillips noted
Plaintiff "has an issue with methamphetamine use" and, therefore,
Dr. Phillips refused to provide Plaintiff with any opiate pain
medications "until such time as he has an evaluation and
treatment by an addictionologist."  Tr. 766.  On October 19,
2009, Donald Walker, F.N.P., observed Plaintiff's record
reflected he should not be prescribed narcotics.  Tr. 774.

    The ALJ also noted Plaintiff admitted at the
September 21, 2010, hearing that he falsely told various
treatment providers that he was working because Plaintiff was
embarrassed to have them believe he was unemployed.  Tr. 394,
417-18.

    Plaintiff testified at the February 14, 2008, hearing that

12 - OPINION AND ORDER

if he was on his feet for four hours, he would have to stay off
his feet the following day and ice his knee.  Tr. 56.  Plaintiff
testified he ices his knee "half the day," "50 percent of the
time" he puts his leg up on pillows, and he wears a knee brace.
Tr. 56-57, 59.  The ALJ noted, however, that in March 2009
Christopher Walton, M.D., examining physician, described
Plaintiff as "an active man" who was "well conditioned."
Tr. 394, 773.  In April 2009 Dr. Phillips noted Plaintiff's motor
strength was "5/5" in all extremities and there was not any
evidence of muscular atrophy even though Plaintiff had a
"slightly antalgic gait pattern."  Tr. 769.

The Court concludes on this record that the ALJ did not err
when he rejected Plaintiff's testimony as to the intensity,
persistence, and limiting effects of his symptoms because the ALJ
provided legally sufficient reasons supported by the record for
doing so.

**II.  Lay-witness testimony.**

Plaintiff contends the ALJ erred when he failed to address
the lay testimony of Alicia Loy-Steiner and Kelsi Chase and
improperly rejected the testimony of Claudia Lillard and Courtney
Larson.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane

13 - OPINION AND ORDER

to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").

### A.    Alicia Loy-Steiner and Kelsi Chase

In March 2006 Plaintiff's girlfriend, Alicia Loy-
Steiner, reported, among other things, that Plaintiff "goes
through a cycle at least once a month" when he "just doesn't want
to do anything.  Getting out of bed, eating, getting dressed is
out of the question.  He sleeps and has no motivation."  Tr. 155.

In May 2007 Plaintiff's friend, Kelsi Chase, reported
Plaintiff "sometimes" does not "have the energy to shave or will
not get out of bed to do so[,] . . . hears voices in his head,
[and] thinks Satan is speaking to him."  Tr. 191, 195.

In his July 17, 2008, decision the ALJ implicitly
rejected the lay-witness testimony of Loy-Steiner and Chase
because the ALJ's RFC determination did not include any
limitations on Plaintiff's attendance.  Judge Mosman concluded
the ALJ erred when he implicitly rejected this testimony because
the ALJ relied on inadequate medical evidence when he did so.
Tr. 471.  Judge Mosman directed the ALJ on remand to "reassess
the credibility of [the lay-witness] testimony."  Tr. 472.

On remand the ALJ did not address the testimony of Loy-

14 - OPINION AND ORDER

Steiner or Chase nor did he include limitations on Plaintiff's attendance in Plaintiff's RFC.  The ALJ, therefore, implicitly rejected the testimony of Loy-Steiner or Chase without "giving reasons germane to each witness for doing so."

Accordingly, the Court concludes the ALJ erred when he failed to address the testimony of Loy-Steiner and Chase.

**B.   Claudia Lillard and Courtney Larson**

In March 2010 Plaintiff's mother, Claudia Lillard, reported Plaintiff has struggled with "chemical imbalances for as long as [she] can remember."  Tr. 620.

In April 2010 Plaintiff's friend, Courtney Larson, reported "half the time in a month [Plaintiff] is down" and "wont [*sic*] move from the bed for days so [Larson] will give him his meds."  Tr. 625.

The ALJ gave "partial weight" to Claudia Lillard's report to the extent that it is consistent with the record.  The ALJ gave "partial weight" to Larson's report but noted it was inconsistent with the July 9, 2010, ER physician's report that Plaintiff did not have any "overt psychiatric issues."  Tr. 397. The ALJ also noted other medical evidence in the record that contradicted Larson's report.  Tr. 396-97.

Accordingly the Court concludes ALJ did not err when he rejected the reports of Larson and Claudia Lillard because the ALJ provided legally sufficient reasons supported by the record

for doing so.

## III. Medical opinion testimony.

Plaintiff contends the ALJ erred when he implicitly rejected the opinion of Larry Bogart, M.D., examining psychiatrist, and did not give "sufficient consideration" to the opinion of Allen Kirkendall, Ph.D., examining psychologist.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d at 830-32.

A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999).

### A.   Dr. Bogart

On February 7, 2008, Dr. Bogart conducted a mental-status examination of Plaintiff.  Plaintiff reported he suffers mood swings that "are pronounced with rapid cycling."  Tr. 383.

16 - OPINION AND ORDER

Plaintiff reported he has periods in which he does not have the energy to move or to get out of bed and "has the sense of another presence, as if possessed by an evil spirit." Tr. 382.

Plaintiff also reported he has periods of

> euthymia when he is friendly, likeable, hard-working and a product person as [during the examination]. However, he often goes abruptly from his depressions into a manic episode. They are described as characterized by racing thoughts, lack of sleep, spending sprees, hyperactivity, pressured speech, and feelings of being "really nervous."

Tr. 382. Dr. Bogart administered a number of psychological tests on Plaintiff including the Beck Depression Inventory, an ADHD screening, and the Young Manic Rating Scale. Tr. 383. Dr. Bogart opined Plaintiff suffers from bipolar disorder and ADHD. Tr. 384. Dr. Bogart assessed Plaintiff with a GAF of 40[2] based on his opinion that Plaintiff has "serious difficulty functioning socially, occupationally, and domestically." Tr. 384.

The ALJ noted in a 2003 examination, Dr. Bogart noted Plaintiff's "perceptual distortions" occurred after Plaintiff used methamphetamines and "are not present at all times." Tr. 245, 395. In his 2008 examination of Plaintiff, however,

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of social, occupational, and psychological functioning on a scale of 1 to 100. Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)

17 - OPINION AND ORDER

Dr. Bogart did not "mention" Plaintiff's history of polysubstance abuse or the potential impact that abuse would have on Plaintiff's reported mental symptoms.  Plaintiff, however, tested positive for amphetamines before and after his 2008 examination by Dr. Bogart, "suggest[ing]" Plaintiff's symptoms were aggravated during his 2008 examination by "his illicit drug use." Tr. 395.  In addition, although Plaintiff reported to Dr. Bogart that he was "basically homeless, while living with a girlfriend on a temporary basis," Plaintiff testified at the February 14, 2008, hearing that he had lived with his girlfriend for two years.  Tr. 35, 382.  Plaintiff explained Housing and Urban Development (HUD) "doesn't allow [his girlfriend] to have people stay more than 14 days so it is kind of a touch and go situation."  Tr. 36.

The ALJ gave limited weight to Dr. Bogart's 2008 opinion because Dr. Bogart "did not account for [Plaintiff's] continued drug use, which likely aggravated [Plaintiff's] mental symptoms" and because portions of that opinion were based on Plaintiff's self-complaints and Plaintiff was found not to be credible as to the intensity and limiting effects of his symptoms.  Tr. 396.

The Court concludes on this record that the ALJ did not err when he gave limited weight to the opinion of Dr. Bogart because he provided legally sufficient reasons supported by the

record for doing so.

**B.  Dr. Kirkendall**

On July 8, 2010, Dr. Kirkendall conducted a
psychological evaluation of Plaintiff for which Dr. Kirkendall
reviewed various psychological evaluations of Plaintiff by
Dr. Bogart; reviewed the July 7, 2007, psychological evaluation
of Plaintiff by Michael R. Villanueava, Psy.D.; and conducted an
interview with Plaintiff.  Tr. 847.  Plaintiff reported to
Dr. Kirkendall that he "reads his bible occasionally when he
needs to rebuke Satan[,] . . . feels afraid most of the time[,]
. . . has an ongoing dialogue with voices[, and] . . . [a]t times
feels as if he is being overwhelmed by an evil presence."
Tr. 848-49.  Plaintiff denied using any street drugs other than
smoking marijuana when he was a teenager.  Tr. 849.
Dr. Kirkendall noted Plaintiff appeared scared during the
interview, was not able to carry on a normal conversation, and
lacked an adequate attention span.  Tr. 850.  Dr. Kirkendall
described Plaintiff as "a very poor historian and thus the
information he shared about his drug and alcohol abuse simply
cannot be considered reliable."  Tr. 849.  Nevertheless,
Dr. Kirkendall opined "whatever [Plaintiff's] substance abuse
history[,] he is a chronically mentally ill individual who is
currently suffering from marked psychotic symptoms."  Tr. 849.
Dr. Kirkendall opined Plaintiff suffers from "schizo-affective

disorder, bipolar type" and ADHD.  Tr. 851.  Dr. Kirkendall assessed a GAF of 30 noting Plaintiff "would be incapable of either understanding or remembering instructions[,] . . . has difficulty sustaining concentration and attention on a regular basis[,] . . . appears to be completely incapable of engaging in appropriate social interactions[,] . . . [and] lacks adaptive skills."  Tr. 851.

The ALJ gave "little weight" to the opinion of Dr. Kirkendall.  The ALJ noted Dr. Kirkendall's opinion is contradicted by other psychiatric assessments in the record.  For example, Dr. Villanueva conducted two neuropsychological evaluations of Plaintiff in 2006 and 2007.  In July 2007 Dr. Villanueva noted Plaintiff was "doing quite a bit better than when [he] last saw him" in 2006.  Tr. 329.  Dr. Villanueva noted Plaintiff was consistently taking Zoloft and "fairly consistently" taking Risperdal, and, as a result, his "episodes of significant fear are much improved" and he had not had a manic episode "for a couple of months."  Tr. 330.  Dr. Villanueva diagnosed Plaintiff with "Bipolar Affective Disorder - Improved" and noted Plaintiff was "calm and coherent" and did "not appear overtly psychotic."  Tr. 331-32.

Similarly, Rick Staggenborg, M.D., treating physician, reviewed Dr. Kirkendall's findings and did not concur with Dr. Kirkendall's conclusion.  Tr. 877.  Dr. Staggenborg opined

Plaintiff did not suffer "from any disabling psychiatric condition." Tr. 877.

In addition, Dr. Kirkendall reported Plaintiff "appeared shocked when [Dr. Kirkendall] shared his opinion that [Plaintiff] is in need of intensive psychiatric and psychological care." Tr. 849. On the day after Plaintiff's evaluation by Dr. Kirkendall, Plaintiff reported to the Emergency Room seeking medication to deal with his knee pain. Tr. 870. Plaintiff reported to the ER doctor that his interview with Dr. Kirkendall "got out of control [because] they kept prodding him and asking him if he was suicidal because of his chronic pain. . . . [H]e states that admittedly he said some things he probably should not have." Tr. 870. The ER doctor reported Plaintiff appeared awake, alert, well-dressed, well-groomed, calm, and collected. Tr. 870. Plaintiff advised he was not suicidal or homicidal. Tr. 870. The doctor further noted the behavioral-health nurse who evaluated Plaintiff at the ER believed "there are no overt psychiatric issues" with Plaintiff. Tr. 870.

The Court concludes on this record that the ALJ did not err when he gave little weight to the opinion of Dr. Kirkendall because he provided legally sufficient reasons supported by the record for doing so.

## IV.  Step Five.

Plaintiff contends the ALJ erred at Step Five when he

concluded Plaintiff could perform other work existing in the
national economy because the ALJ failed to include in his
assessment of Plaintiff's RFC the limitations set out by
Plaintiff, the lay witnesses, and Drs. Bogart and Kirkendall.

Because the Court has concluded the ALJ did not err when he
rejected Plaintiff's testimony, the testimony of Claudia Lillard
and Larson, and the opinions of Drs. Bogart and Kirkendall, the
Court also concludes on this record that the ALJ posed a
sufficient hypothetical to the VE and properly relied on the VE's
testimony when he determined that Plaintiff could perform other
work existing in the national economy.


## REMAND

The Court must determine whether to remand this matter for
further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,

22 - OPINION AND ORDER

1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are
not necessary.  Although the ALJ failed to address the testimony
of Loy-Steiner and Chase, the Court finds the ALJ adequately
addressed and rejected allegations that Plaintiff suffered the
kinds of symptoms reported by Loy-Steiner and Chase.  The Court,
therefore, concludes there are not any outstanding issues that
must be resolved before the ALJ could make a determination on
disability.

Accordingly, the Court affirms the decision of the ALJ and
declines to remand this matter for further proceedings.


### CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 26th day of April, 2012.


                    /s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


24 - OPINION AND ORDER